Submitted on briefs November 27, appeal dismissed December 12, 1951; petition for rehearing denied January 23, 1952

OREGON STATE GRANGE ET AL. *v.*
McKAY, AS GOVERNOR

238 P. 2d 778
239 P. 2d 834

*Kell & Hamilton,* of Portland, submitted briefs for appellants.

*George Neuner,* Attorney General, and *E. G. Foxley,* Deputy Attorney General, of Salem, submitted a brief for respondent.

PER CURIAM.

This is a proceeding in mandamus. The Circuit Court sustained a demurrer to the alternative writ and, the relators having refused to plead further, entered judgment for the defendant. Relators appeal.

The purpose of the action, which was commenced by the Oregon State Grange and others, was to compel the defendant, Douglas McKay, governor of the state of Oregon, to rescind a proclamation issued by him April 5, 1951, putting into effect what is popularly known as "daylight saving time." Chapter 373, Oregon Laws, 1949, which was approved by the voters on referendum at the general election held November 7, 1950 (Oregon Laws 1951, p. 12), authorizes the governor, after having made a formal finding of fact that "the economy and general welfare of this state are placed at material disadvantage by lack of uniformity between standard Oregon time as herein established and the time in general use in the states

bordering on Oregon'' to ''by proclamation published throughout the state vary standard Oregon time as herein established by not more than one hour and for such period as may be necessary to eliminate such condition.'' Pursuant to the statute the governor proclaimed that ''Oregon standard time shall be advanced one hour throughout the State of Oregon during a period to begin at 12:01 a. m., Sunday, April 29, 1951, and to end at 12:00 p. m., Sunday, September 30, 1951, after which Oregon standard time shall be and exist.''

It is the contention of the relators that the governor exceeded his authority because, as they assert, the condition stated in the statute had not arisen, and the proclamation, therefore, was, in the language of the alternative writ, ''illegal and unlawful and contrary to the laws of the State of Oregon.''

██ The period of daylight saving time proclaimed by the governor expired on September 30, 1951, at 12:00 p. m. The proclamation is functus officio, and no judgment of this court would be effective to grant the relief which the relators seek. This has become a moot case by the passage of time. The rule governing appellate courts in such circumstances is clearly stated by Chief Justice Robert S. BEAN in *State ex rel. v. Grand Jury,* 37 Or. 542, 62 P. 208. The opinion is brief and we copy it in full:

> ''This is a mandamus proceeding, commenced in April, 1897, to compel the then grand jury of Multnomah County to inquire into a criminal charge against one Anderson, who had previously been committed to await its action. The grand jurors answered, setting up matters which they claimed constituted a defense to the alternative writ. A demurrer to the answer was overruled, and, the plaintiff declining to proceed or plead further, the writ was dismissed, and the plaintiff appeals.

"About the time the transcript was filed, or soon thereafter, the grand jury was discharged, so that it is now impossible for the court to enforce a judgment against it, if one should be rendered. A grand jury is temporary in its character, and, when discharged, becomes *functus officio,* and thus differs from a permanent office. An appellate court, like every other judicial tribunal, is empowered to decide actual controversies only, and not to give opinions upon mooted questions, or mere abstract propositions of law. The rule is general, therefore, that when an event occurs pending an appeal which renders it impossible for the court to grant the relief sought, it will not proceed to final judgment, but will dismiss the appeal (Jacksonville School Dist. v. Crowell, 33 Or 11, 52 Pac. 693; Moores v. Moores, 36 Or. 261, 59 Pac. 327; California v. San Pablo & T. R. Co., 149 U. S. 308, 13 Sup. Ct. 876; Mills v. Green, 159 U. S. 651, 16 Sup. Ct. 132; People ex rel. v. Common Council of City of Troy, 82 N. Y. 575); and, as said by the Supreme Court of the United States, in California v. San Pablo & T. R. Co., 149 U. S. 308, 13 Sup. Ct. 876, 'no stipulation of parties or counsel, whether in the case before the court or in any other case can enlarge the power or affect the duty of the court in this regard.' The appeal will therefore be dismissed."

Among numerous other Oregon cases applying these principles see *Francis v. Schuman,* 74 Or. 454, 145 P. 668; *Dimick v. Latourette,* 72 Or. 231, 143 P. 896; *Portland v. Investment Company,* 59 Or. 598, 117 P. 991; *State ex rel. v. Webster,* 58 Or. 376, 114 P. 932; *State ex rel. v. Fields,* 53 Or. 453, 101 P. 218. For a full review of the authorities from other jurisdictions see *State ex rel. v. Jones,* 61 Wyo. 350, 157 P. 2d 993. See, also, 3 Am. Jur., Appeal and Error, 314, § 737; 4 C.J.S., Appeal and Error, 1967, § 1362.

The appeal is dismissed.

PETITION FOR REHEARING

*Kell & Hamilton,* of Portland, for the petition.

*George Neuner,* Attorney General, and *E. G. Fox-ley,* Deputy Attorney General, of Salem, contra.

## PER CURIAM.

The appellants, relators in the court below, have petitioned for a rehearing on the ground that the court erred in not applying to this case the exception to the general rule concerning moot cases stated in *Perry v. Oregon Liquor Control Commission,* 180 Or 495, 498, 499, 177 P2d 406, as follows:

> "We agree that courts ordinarily do not determine moot questions. There is, however, a well recognized exception to this general rule. Where the question is one involving the public welfare, and there is a likelihood of it being raised again in the future, a court in the exercise of its discretion may decide it for the guidance of an official administrative agency."

We, of course, recognize that courts will, in the exercise of discretion, decide moot questions when the conditions referred to in the Perry case are present. We considered the exception to the general rule before rendering our former opinion, but we are not prepared to say that this case meets those conditions.

The authority of the governor to proclaim a period of daylight saving time is found in § 3 of ch. 373, Oregon Laws 1949, which reads:

> "At any future time when the economy and general welfare of this state are placed at material disadvantage by lack of uniformity between standard Oregon time as herein established and the time in

general use in the states bordering on Oregon, and upon a formal finding of such fact made by the governor of this state then and in that event only the governor shall by proclamation published throughout the state vary standard Oregon time as herein established by not more than one hour and for such period as may be necessary to eliminate such condition. After any such proclamation standard Oregon time shall be and exist as stated in such proclamation."

Action by the governor under this provision in this or future years will depend upon what other states may do and a finding by the governor that "the economy and general welfare of this state are placed at material disadvantage by lack of uniformity between standard Oregon time" and "the time in general use in the states bordering on Oregon." We cannot say that it is either likely or unlikely that a situation will again arise which will move the governor to make the "formal finding of fact" which must be the basis of his proclamation. There is even more uncertainty as to whether the precise state of facts disclosed by the plaintiff's petition will ever recur, namely, the existence of daylight saving time in some of the states bordering on Oregon and not in others. It is this which gave rise to one of the principal questions in this case: the construction of the words "the time in general use in the states bordering on Oregon" in § 3 of the statute.

The Perry case called for a construction of the Oregon Liquor Control Act, §§ 24-101 et seq., OCLA, and the validity of a regulation adopted by the Oregon Liquor Control Commission, an administrative agency, with respect to licensees under the act. The plaintiff, Perry, by her suit, sought the cancellation of an order of the commission suspending a license to operate a club for a period of sixty days on the ground that one of

her employees had been convicted of selling spirituous liquors on the licensed premises, which was a misdemeanor. The commission had acted pursuant to a regulation adopted by it which made licensees accountable for the unlawful acts of their employees. Perry contended that the regulation was invalid, that under the statute she could not be deprived of her license save for her own acts. The circuit court decreed that the order of suspension should be cancelled and the commission appealed. By the time the case reached this court the sixty day period of suspension had expired and the question had become academic as far as the immediate parties were concerned. We took jurisdiction, nevertheless, for the purpose of determining the validity of the regulation, because the problem was a continuing one, and the necessity or propriety of a decision on a question of law which should guide the commission when again called upon to act in similar cases, was obvious. See *Southern P. Terminal Co. v. Interstate Com. Com.*, 219 US 498, 55 L ed 310, 316, 31 S Ct 279. We find no such urgency in the present case.

The relators' expressed apprehension that it will be impossible ever to obtain a judicial review of future executive action under this statute should we adhere to our decision is, in our opinion, groundless. Even though a mandamus action, timely filed in the circuit court, could not be brought to this court and decided before the question became moot (and this we doubt), there are other procedures available and presumably known to counsel, which, if resorted to, would obviate the result they fear.

The petition for rehearing is denied.