66 Wn.2d 14 (1965)
400 P.2d 778
NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, PUGET SOUND CHAPTER et al., Respondents,
v.
SEATTLE SCHOOL DISTRICT NO. 1, Appellant.[*]
No. 37262.
The Supreme Court of Washington, En Banc.
April 8, 1965.
Charles O. Carroll, James J. Caplinger, and William L. Paul, Jr., for appellant.
*15 Ferguson & Burdell, Edward Hilpert, Jr., and Donald McL. Davidson, for respondents.
HILL, J.
Seattle School District No. 1, confronted with the imperative need for a new electrical switchboard at its Edison Vocational School, advertised for bids for the furnishing of the switchboard. May 29, 1963, the contract was awarded to North Coast Electric Company on its bid of $10,600. The School District had already decided to perform the necessary installation work through its own maintenance department[1] without advertising for bids for such installation. On July 29, 1963, it commenced work on the installation.
The plaintiff, National Electrical Contractors Association, Puget Sound Chapter, a corporation, having previously insisted that bids for the installation were required, commenced this action, together with a tax-paying husband and wife, July 30, 1963, alleging that the cost of the acquisition and installation of the switchboard would exceed $2,500; that the School District, unless restrained, would proceed to do the work of installation without advertising for bids or letting a contract; and that this would be an attempt to circumvent RCW 28.58.135 (Laws of 1961, ch. 224).[2]
It was essential that the new switchboard be installed by the time school opened in early September, and the litigants cooperated to secure an immediate hearing.
August 12, the trial court made and entered findings of fact and conclusions of law; and enjoined the School District from
further proceeding in any manner with the installation of the electrical switchboard ... through the services of its own maintenance department or in any manner other than by advertising for bids for a contract with an independent contractor in accordance with Chapter 224 of the Laws of the State of Washington of 1961.
*16 On the same day the trial court refused to approve a supersedeas bond. On application to this court for an order of supersedeas, it appeared that if bids were called for and a contract let, the work of installation could not be completed until some time after the opening of school, which would constitute a great detriment and injury to the School District's program of vocational education and to the students participating therein.
The Chief Justice therefore superseded the permanent injunction, pending the appeal, conditioned upon the School District filing a supersedeas bond in the sum of $5,000; and all parties agreed that "the issues on appeal shall not hereby be rendered moot ... by performance of the work"; and this statement was made a part of the order granting supersedeas. The work was completed[3] in time for the opening of school on September 4.
The appeal was heard on the merits May 19, 1964, and two principal issues were presented. The first involved a question of statutory interpretation, i.e., whether under the wording of RCW 28.58.135[4] the acquisition and installation *17 of the new electrical switchboard constituted a single improvement, or whether there could be a segregation with the $2,500 limitation in the statute applying to the installation.
If it was decided that the installation was separate from the acquisition and could be done by the School District, if within the $2,500 limitation, then the second issue had to be considered, i.e., what showing did the plaintiffs have to make to be entitled to an injunction preventing the School District from proceeding with the work? The plaintiffs argued: The trial court having found that the "reasonable cost of the installation thereof is, and at all times material has been known to the Board of Directors of said School District to be in excess of $2,500," the School District had no right to proceed.
The School District argued: The School District having made its determination that the installation could be made for less than $2,500, the test for granting an injunction was not whether they were wrong in their estimate, but whether they had acted arbitrarily, capriciously, or fraudulently.
This court, however, was not content with the discussion of these issues and raised the further issue of mootness by questions from the bench. A rehearing was ordered, limited to that issue, which rehearing was on October 26, 1964.
Obviously, the electrical switchboard has been installed and is in use. Whether the Seattle School District should have been enjoined from doing that work is a matter of interest and concern so far as future installations are concerned, but is of only academic interest insofar as the present litigation is concerned.
[1] The fact that this issue is moot does not necessarily divest the court of jurisdiction, although we have quite consistently dismissed appeals which have become moot *18 and declined to give advisory opinions. Cooper v. Department of Institutions, 63 Wn.2d 722, 388 P.2d 925 (1964); Rosling v. Seattle Bldg. & Constr. Trades Council, 62 Wn.2d 905, 385 P.2d 29 (1963); State v. International Typographical Union, 57 Wn.2d 151, 356 P.2d 6 (1960); Hansen v. West Coast Wholesale Drug Co., 47 Wn.2d 825, 289 P.2d 718 (1955); Friendly Finance Corp. v. Koster, 45 Wn.2d 374, 274 P.2d 586 (1954).
Our decisions on this point date back to State ex rel. Coiner v. Wickersham, 16 Wash. 161, 47 Pac. 421 (1896). A long list of similar holdings may be found in the dissent in In re Ellern, 23 Wn.2d 219 at pages 227, 228, 160 P.2d 639 (1945).
Appeals in other jurisdictions have been retained, even though moot, inasmuch as matters of "public interest" were involved, particularly when it was important that a particular statute be correctly construed or when the final determination of a particular question was essential in guiding the conduct of public officials. In Pallas v. Johnson, 100 Colo. 449, 450, 68 P.2d 559, 110 A.L.R. 1403 (1937), the question was presented whether the Colorado State Purchasing Agent had acted within his authority in accepting a bid other than the lowest bid on a contract for the plumbing and heating work on a state building. A statute required the contract be awarded "`to the lowest responsible bidder, taking into consideration the location of the institution or agency.'" The reason assigned for not letting the contract to the lowest bidder was that it was an "open shop" concern, and that the completion of the entire project would be delayed by labor difficulties if such bid was accepted. The plaintiff, a taxpayer, sought to enjoin the state from proceeding under the accepted and higher bid. By the time the case reached the Supreme Court, it was reported that the work had been or was nearly completed. The court said:
If that is true, the case is moot, strictly speaking, and would be so considered unless, as here, interests of a public character may again be immediately involved in *19 like manner. Consequently this warrants, even if it does not require, our determination in order to obviate similar future controversies and litigation.
The Supreme Court of Oregon, in a habeas corpus case (Huffman v. Alexander, 197 Ore. 283, 332-33, 251 P.2d 87, 253 P.2d 289-90 (1953)), upheld the discretionary right of the court to pass on questions of public importance despite their mootness. The court there said:
For the first time, we are now informed by counsel that the plaintiff was discharged from custody 20 days after the case was argued here, and considerably before this court had completed its study of the varied and profoundly important issues presented. Working thus in the dark, we have expended time and effort in a case which became moot 20 days after we had heard the argument.
....
This case being now moot, the question for our consideration is whether we should pass upon the contentions of the Attorney General because of public interest, not in this case, but in the questions of procedural law which are presented. The discretionary right of this court to pass upon questions of public importance which have become moot is recognized by the authorities. In re Suspension of License by Oregon Liquor Control Commission, 180 Or 495, 177 P.2d 406; 3 Am Jur, Appeal and Error, § 733, P 310.
(The current Am. Jur. citation would be 5 Am.Jur.2d, Appeal and Error § 768, pp. 210-12, where Oregon State Grange v. McKay, 193 Ore. 627, 238 P.2d 778, 239 P.2d 834 (1951), is also cited together with cases from New York, North Dakota, Illinois, and Ohio.)
The Illinois case is People ex rel. Wallace v. Labrenz, 411 Ill. 618, 622, 104 N.E.2d 769, 772, 30 A.L.R.2d 1132, 1135-36 (1952), which involved the power of public authorities to order a blood transfusion for a child over the objection of a parent or guardian. As to mootness, the court said:
Before we reach the merits, we meet the State's contention that the case is now moot and should be dismissed because the blood transfusion has been administered, the guardian discharged, and the proceeding dismissed. Because the function of courts is to decide controverted issues in adversary proceedings, moot cases which do not *20 present live issues are not ordinarily entertained. "The general rule is that when a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved or where the substantial questions involved in the trial court no longer exist, it will dismiss the appeal or writ of error." People v. Redlich, 402 Ill. 270, 279.
But when the issue presented is of substantial public interest, a well-recognized exception exists to the general rule that a case which has become moot will be dismissed upon appeal. (See cases collected in 132 A.L.R. 1185.) Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question.
See also Annotation in 132 A.L.R. 1185 at pages 1189-90.
In Washington, we too have recognized that, under some circumstances, an appeal may be retained even though the questions presented have become moot. In State ex rel. Yakima Amusement Co. v. Yakima Cy., 192 Wash. 179, 183, 73 P.2d 759, 761 (1937), the county moved to dismiss an appeal upon the ground that all questions involved had become moot by virtue of the payment, without protest, of all of the taxes, the assessment of which the appellants were attacking. The court refused to dismiss the appeal, saying:
It has been held, however, that, when the questions involved are of great public interest, and the real merits of the controversy are unsettled, the court will consider the questions involved, notwithstanding the fact that they have become moot. O'Laughlin v. Carlson, 30 N.D. 213, 152 N.W. 675.
We are persuaded that we are justified in exercising our discretion and retaining this appeal, notwithstanding that the immediate issue of whether an injunction should have been entered in this case is now moot. It seems desirable that school districts throughout the state should have an authoritative construction of RCW 28.58.135 (see note 4) for their guidance in like situations.
*21 We are here particularly concerned with what constitutes an improvement under the proviso in that statute, which proviso, the School District urges, gives it the authority to make this particular installation; it reads:

Provided, That the board may without giving such notice make improvements or repairs to the property of the district through the shop and repair department of such district when the total of such improvements or repair do not exceed the sum of two thousand five hundred dollars.
[2] We find nothing in the statute which prevents the separation of contracts for the installation of equipment from contracts for the purchase of the equipment. Indeed, in this particular situation it is conceded that none of the suppliers of this type of equipment will install it.
The respondents (plaintiffs) labor for a totally unrealistic definition of "improvements," which would always unite the acquisition of an article with its installation. The statute, in at least three places, refers to contracts for "work or purchases."
We have no quarrel with saying that the purchase and the installation constitute an improvement; but that is not inconsistent with saying that an installation is, in itself, an improvement.
Wherever the purchase of an article and its installation can be segregated and done under separate contracts, the School District, through its own employees, may (by virtue of the proviso in the statute) do the work of installation if the cost of the installation does not exceed the $2,500 limitation irrespective of what the article may have cost.
The respondents (plaintiffs) recognize that their interpretation to the contrary would lead to absurd results. Under their interpretation, if a school district contracted for the purchase of $2,501 worth of window glass, or light bulbs, or desks, or blackboards, it must call for bids for their installation because the cost of the improvement obviously would be in excess of $2,500. To avoid such results, they suggest that an installation costing less than $100 would be within the de minimus rule and, in such a case, no bids *22 would be required. It seems to us that the legislature has set the limit of the cost of an installation by the district itself at $2,500, and not at $100 as the respondents (plaintiffs) suggest.
We are satisfied that the trial court was in error in its construction of the statute that led to its conclusion that because the electrical switchboard itself cost more than $2,500 ($10,600), the School District was therefore obligated to call for bids for its installation inasmuch as the total cost of acquisition and installation was obviously over $2,500.
Whether the trial court was in error in concluding that, in any event, the installation would cost the School District over $2,500, we shall not consider. That issue does not present a matter of great public interest, and is inextricably involved in disputed factual issues as to the costs of the work which are peculiar to this particular case. As to issues of this character, the usual rule of mootness should apply.
Before closing this opinion, we should state that there are members of the court who question whether either the corporate or the taxpayer plaintiffs (respondents) were entitled to maintain this action.[5] The court, however, is not disposed at this stage of the proceedings to consider seriously issues which have not been briefed or argued. We note the existence of these bothersome questions in order that this case may not be regarded as being a precedent in regard to who are proper parties plaintiff in such a proceeding. Those issues were not raised.
*23 [3] Since this appeal was retained and decided, not for any benefit which either of the parties would receive in consequence of the decision, but for the public interest involved, there will be no award of costs.
DONWORTH, FINLEY, WEAVER, OTT, HUNTER, HAMILTON, and HALE, JJ., concur. ROSELLINI, C.J. (dissenting)
I dissent for the sole reason that I do not believe an opinion should be rendered in this case, which has admittedly become moot. As the majority have conceded, this court has consistently refused to render opinions in moot cases. I think if we have such a rule, it should be applied impartially. An argument can always be made that the question of law before the court is one of "public interest," and the result is that the rule will be relaxed in some cases of "public interest" and not in others.
There are sound reasons why the court should not decide moot cases. Something of the adversary enthusiasm is lost in such cases, and the danger of reaching an erroneous decision because the issues have not been adequately argued is increased.
Also, I do not think the court should spend its time rendering gratuitous decisions when it has on hand an immense backlog of "live" cases to decide and is working under steadily increasing pressure. By rendering this unnecessary opinion, it invites an influx of other "test" cases, in each of which the court will have to take time to decide whether the case is of sufficient "public interest" to warrant the rendering of an opinion. This is time which should be spent deciding the actual controversies which are at hand.
I would dismiss the appeal.
NOTES
[*] Reported in 400 P.2d 778.
[1] This department employs approximately 200 people in the building trades, including carpenters, plumbers, electricians, etc.
[2] See note 4, infra.
[3] The total cost of installation, as shown by a statement from the School District, was $2,733.64; but with a notation that this included overtime pay for work done on the Labor-Day weekend, which would not have been necessary but for the injunction proceeding; and, subtracting that overtime pay, the cost to the School District was $2,444.57. The plaintiffs-respondents do not concede that these figures represent the true cost.
[4] RCW 28.58.135: "When, in the opinion of the board of directors of any school district, the cost of any furniture, supplies, equipment, building, improvements or repairs, or other work or purchases will equal or exceed the sum of twenty-five hundred dollars, complete plans and specifications for such work or purchases shall be prepared and notice by publication given in at least one newspaper of general circulation within the district, once each week for two consecutive weeks, of the intention to receive bids therefor and that specifications and other information may be examined at the office of the board: Provided, That the board may without giving such notice make improvements or repairs to the property of the district through the shop and repair department of such district when the total of such improvements or repair do not exceed the sum of two thousand five hundred dollars. The bids shall be in writing and shall be opened and read in public on the date and in the place named in the notice and after being opened shall be filed for public inspection. The contract for the work or purchase shall be awarded to the lowest responsible bidder as defined in RCW 43.19.1911. Any or all bids may be rejected for good cause. On any work or purchase of more than five hundred dollars, the board shall provide bidding information to any qualified bidder or his agent, requesting it in person, and if more than one supplier is available, it shall seek competitive bidding in such manner as it deems in the best interests of the district."
[5] The interest of a contractor deprived of a right to bid is obvious; but the interest of the corporate association, which sustained no injury by the failure to call for bids and could not have done the work or made a bid, presents a different situation. Likewise, the interest of a taxpayer, who protests the payment of more tax money than necessary for a certain purpose, has frequently been favorably considered; but where his plea is that the work should be done by electrical contractors at an enhanced cost to the taxpayer, the interest is not so clear. (No issue is raised that the quality of work done by the School District's employees is not equivalent to that done by the employees of electrical contractors.) It may well be that both corporate and the taxpayer plaintiffs have complete and satisfactory answers to these questions. The purpose here is merely to indicate that the questions do exist.