[No. 8287-6-I.   Division One.   November 2, 1981.]

DONALD R. MILTON, *Appellant*, v. LAWRENCE G. WALDT, *Respondent*.

*Sinsheimer, Meltzer & Gelbart, Inc., P.S.,* and *Ronald J. Meltzer,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Joseph A. Zimmerman, Special Deputy,* for respondent.

ANDERSEN, J.—

FACTS OF CASE

Donald R. Milton's permit to carry a concealed weapon was revoked by the King County Department of Public Safety. He brings this appeal from the trial court's refusal

to grant a writ of mandamus requiring reinstatement of the permit issued to him in February of 1979.

One issue is determinative.

## ISSUE

Is this controversy moot?

## DECISION

CONCLUSION. Since the concealed weapon permit in question has expired, the controversy is moot and the appeal should be dismissed.

In the trial court, Mr. Milton demanded that his concealed weapons permit "should be reinstated for the balance of the term of the permit". Such permits authorize the permit holder "to carry a pistol concealed on his person within this state for two years from date of issue". RCW 9.41.070.

By the terms of the permit in question, it expired on February 24, 1981. That was prior to this appeal being heard. No request to expedite or accelerate the appeal was made. The appeal is therefore moot. *See State ex rel. Burnham v. Superior Court,* 180 Wash. 519, 520–22, 41 P.2d 155 (1935).

The appeal is dismissed.

WILLIAMS, J., concurs.

JAMES, C.J. (dissenting)—Although I agree with the majority that the issue in this case is moot, I would nevertheless wish this court to render its opinion construing RCW 9.41.070. The fact that an issue is moot does not necessarily divest an appellate court of jurisdiction. *National Electrical Contractors Ass'n v. Seattle School Dist. 1,* 66 Wn.2d 14, 400 P.2d 778 (1965); *Federated Publications, Inc. v. Kurtz,* 94 Wn.2d 51, 615 P.2d 440 (1980).

An appellate court may, in its discretion, retain and decide an appeal which has otherwise become moot where matters of continuing and substantial public interest are involved, or the real merits of the controversy are unsettled,

or where there are continuing questions of law and fact. *Grays Harbor Paper Co. v. Grays Harbor County,* 74 Wn.2d 70, 442 P.2d 967 (1968); *National Electrical Contractors Ass'n v. Seattle School Dist. 1, supra.* I believe that a continuing issue of law involving the proper construction of RCW 9.41.070 exists, and that the real merits of the controversy between Milton and the Department remain undecided. Also, this question will doubtless be a recurring one, making desirable an authoritative determination for the guidance of public officers. *Hartman v. State Game Comm'n,* 85 Wn.2d 176, 532 P.2d 614 (1975). Finally, the inevitable delay after administrative action denying or revoking a license or permit, until a decision by an appellate court is rendered, means that dismissal of appeals as moot where a license of short duration is involved may preclude effective appellate review of administrative action. For these reasons, I believe we should address the parties' opposing interpretations of RCW 9.41.070.

On January 10, 1979, Milton applied for a King County permit to carry a concealed weapon. The standard background check through law enforcement agencies showed that Milton had been convicted for driving while intoxicated on three occasions, was also charged with reckless driving on one of those occasions (charge dismissed), and was charged once with possession of marijuana (charge dismissed "with probable cause"). On February 22, Milton's application was rejected. After further discussion between Milton and the Department, the Department reversed its prior rejection and issued a permit.

Milton was subsequently arrested in Oregon while in apparent possession of a van equipped with concealed storage areas and containing marijuana, $5,000 cash, and a set of scales. Milton was carrying a revolver inside his right boot. The arrest did not result in a conviction. The Department thereafter revoked his permit. Milton filed a petition for a writ of mandamus directing the Department to reinstate his permit. The trial judge denied the petition "because the licensing function performed by [the Depart-

ment] under RCW 9.41.070 is discretionary in both issuance and revocation of such licenses."

RCW 9.41.070 provides:

> The judge of a court of record, the chief of police of a municipality, or the sheriff of a county, shall within thirty days after the filing of an application of any person issue a license to such person to carry a pistol concealed on his person within this state for two years from date of issue, for the purposes of protection or while engaged in business, sport or while traveling. Such citizen's constitutional right to bear arms shall not be denied to him, unless he is ineligible to own a pistol under the provisions of RCW 9.41.040 as now or hereafter amended or there exists a record of his prior court conviction of a crime of violence or of drug addiction or of habitual drunkenness or of confinement to a mental institution: *Provided,* That such permit shall be revoked immediately upon conviction of a crime which makes such a person ineligible to own a pistol.

Milton contends that RCW 9.41.070 imposes upon the Department a mandatory duty to issue a concealed weapons permit unless the applicant is a member of a class specifically excluded from obtaining a permit. The Department responds that, consistent with the legislative purpose of providing adequate licensing of this dangerous activity, the statute creates only a discretionary responsibility.

I do not doubt that the carrying of concealed weapons is a dangerous activity whose regulation is dictated by sound public policy. The legislature has determined the scope of such regulation by its enactment of RCW 9.41.070. This statute states that the sheriff "*shall* within thirty days after the filing of an application of any person issue a license . . ." (Italics mine.)

When "shall" is used in a statute which sets forth the responsibilities of a public official, the word may be either mandatory or permissive. The general considerations relevant to this determination are stated in *Spokane County ex rel. Sullivan v. Glover,* 2 Wn.2d 162, 169, 97 P.2d 628 (1940):

> As a general rule, the word "shall," when used in a

statute, is imperative and operates to impose a duty which may be enforced, while the word "may" is permissive only and operates to confer discretion. These words, however, are frequently used interchangeably in statutes, and without regard to their literal meaning. In each case, the word is to be given that effect which is necessary to carry out the intention of the legislature as determined by the ordinary rules of construction.

Our Supreme Court has more recently stated:

In determining the meaning of the word "shall" we traditionally have considered the legislative intent as evidenced by all the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another.

*State v. Huntzinger,* 92 Wn.2d 128, 133, 594 P.2d 917 (1979).

The clearest manifestation of legislative intent may be found in the history of Washington's concealed weapons permit laws. The present statute was enacted in 1961, Laws of 1961, ch. 124, § 6, p. 1640, substantially amending the predecessor statute enacted in 1935. The former version provided:

The judge of a court of record, the chief of police of a municipality, the sheriff of a county, shall upon the application of any person issue a license to such person to carry a pistol in a vehicle or concealed on or about his person within this state for not more than one year from date of issue, *if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a pistol, and that he is a suitable person to be so licensed.*

(Italics mine.) Laws of 1935, ch. 172, § 7, p. 600–01. Clearly, the 1935 enactment accorded great discretion to the licensing official. By shifting the regulatory focus from a determination of whether the applicant "is a suitable person to be so licensed", to a denial of the applicant's "constitutional right to bear arms" in specific circumstances, the legislature obviously intended to curtail the discretion of

the licensing authority.

This statutory revision is indicative of the two objects at which RCW 9.41.070 is directed. Not only has the legislature sought to protect the public against possession of concealed weapons by certain persons, as the Department recognizes, but the legislature has also sought to provide for implementation of the constitutional "right of the individual citizen to bear arms in defense of himself," Const. art 1, § 24. Consistent with this purpose, the legislature has specifically identified those classes of persons to whom permits are denied.

Consequently, *Spokane v. Spokane Police Guild,* 87 Wn.2d 457, 553 P.2d 1316 (1976), upon which the Department relies, is inapposite. This case is representative of decisions which conclude that "shall" imposed only a discretionary responsibility where the statute provided that action "shall" be taken within a specified period and a mandatory interpretation of "shall" could frustrate the legislative purpose. *State Liquor Control Bd. v. State Personnel Bd.,* 88 Wn.2d 368, 561 P.2d 195 (1977); *Seattle v. Auto Sheet Metal Workers Local 387,* 27 Wn. App. 669, 620 P.2d 119 (1980); *Ticeson v. Department of Social & Health Servs.,* 19 Wn. App. 489, 576 P.2d 78 (1978). More apposite to this case is *Jordan v. O'Brien,* 79 Wn.2d 406, 410, 486 P.2d 290 (1971), involving construction of a statute providing that a judge "shall" receive an additional benefit upon specified conditions. There, the court explained, "When the right of anyone depends upon giving the word *shall* an imperative construction, *shall* is presumed to have been used in reference to that right or benefit, and it receives a mandatory interpretation." *Accord, Burr v. Lane,* 10 Wn. App. 661, 517 P.2d 988 (1974). I would hold that RCW 9.41.070 imposes a mandatory duty upon the licensing authority to issue à concealed weapons permit unless the applicant is a member of a class specifically excluded by the statute.

The Department bases its revocation of Milton's permit upon RCW 9.41.070's proviso that a person is ineligible to

obtain a concealed weapons permit if "there exists a record of his prior court conviction of a crime of violence or of drug addiction or of habitual drunkenness or of confinement to a mental institution". The Department contends that "conviction" refers only to a "crime of violence" and that persons who have "records" of drug addiction, for example, are ineligible for permits. I agree. Even prior to repeal of statutes criminalizing "habitual drunkenness," Laws of 1972, 1st Ex. Sess., ch. 122, § 26, p. 312, and "drug addiction," Laws of 1975, 2d Ex. Sess., ch. 103, § 3, p. 330, one could not be convicted of "confinement to a mental institution."

The legislature is, however, presumed to be familiar with its prior enactments when it enacts a new statute, *Baker v. Baker*, 91 Wn.2d 482, 588 P.2d 1164 (1979). I presume that the legislature was aware of its definitions of "narcotic addict" and "habitual drunkard" in existing law when it employed the terms "drug addiction" and "habitual drunkenness" in RCW 9.41.070. A "narcotic addict" is now, and was in 1961, defined as "a person who habitually uses a narcotic drug or drugs." RCW 69.32.010, enacted Laws of 1959, ch. 27, § 69.32.010, p. 197. A "habitual drunkard" was then defined as any person "addicted to the use of intoxicating liquors . . ." Laws of 1959, ch. 25, § 71.08.030, p. 104. Both "drug addiction" and "habitual drunkenness" thus refer to a habitual or addictive dependence upon drugs or alcohol.

A person could also formerly be adjudged a "common drunkard" upon three convictions for violating a statute prohibiting loitering about, using indecent language, breaching the peace, or assaulting another while intoxicated. Laws of 1959, ch. 25, §§ 71.08.010–.020, p. 104. But the use of the term "habitual drunkenness" in RCW 9.41-.070 indicates that the legislature did not intend to treat every alcohol–related offense as a basis for denying a concealed weapons permit.

The record before us does not indicate that Milton is addicted to either drugs or alcohol. I conclude that the trial

judge erred in denying Milton's motion for a writ of mandamus.

In light of the volume of serious gun–related crime which has occurred since 1961 and the inherent dangers of carrying concealed weapons, especially in urban areas, RCW 9.41.070 may as a matter of public policy be overly restrictive of the licensing authority's power to deny permits to unsuitable persons. Nevertheless, RCW 9.41.070's language and legislative history demonstrate convincingly that the legislature intended to limit official discretion in this area. The wisdom of such restrictions on the licensing authority is a matter for legislative rather than judicial determination.